## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOVON C. DAVIS,

              Petitioner,

    v.

WILLIS CHAPMAN,

              Respondent.

Case No. 18-10391
Hon. Terrence G. Berg

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS

Jovon C. Davis, ("Petitioner"), incarcerated at the Thumb Correctional Facility in Lapeer, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for second-degree murder, Mich. Comp. Laws § 750.317; assault with intent to commit murder, Mich. Comp. Laws § 750.83; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; carrying a concealed weapon, Mich. Comp. Laws § 750.227; felony-firearm, Mich. Comp. Laws § 750.227b, and domestic violence, third-offense, Mich. Comp. Laws § 750.81(4). For the reasons stated below, the petition for a writ of habeas corpus is **DENIED**.

1

# I. Background

Petitioner was convicted following a jury trial in the Berrien County Circuit Court.[1] This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise out of the murder of Gary Alilovich and the assault of Heather Britt on January 18, 2013, at the house of Crystal McKenzie in Benton Harbor.
> ********************************************************
> Britt testified that she and defendant had been dating "off and on" for six years and that they lived together. On January 18, 2013, Britt and Alilovich, whom Britt had previously dated, were at McKenzie's house. McKenzie testified that after she and defendant arrived, defendant started to hit Britt in the face with his hands after she pushed him. Alilovich, using words only, tried to stop defendant. Defendant pushed Alilovich, and then started to hit Britt in the face with his fists. Alilovich tried to stop defendant again, telling defendant to "get the fuck back." McKenzie did not see Alilovich with a knife. According to McKenzie, while she was in the kitchen fighting with Ashley Davis, defendant's cousin, she heard a gunshot in a bedroom. She ran toward the bedroom, and saw

---

[1] Petitioner was originally charged with open murder on the murder count. Under Michigan law, the charge of open murder gives a circuit court jurisdiction to try a defendant on first- and second-degree murder charges. *See Taylor v. Withrow*, 288 F.3d 846, 849 (6th Cir. 2002); *see also Williams v. Jones*, 231 F. Supp. 2d 586, 589 (E.D. Mich. 2002) (citing Mich. Comp. Laws § 750.316, 750.318; *People v. McKinney*, 237 N.W.2d 215, 218 (1975)).

defendant pointing a gun at Alilovich. Alilovich was on his knees and begging defendant not to shoot. McKenzie ran out of the bedroom after she saw defendant take a second shot at Alilovich. McKenzie heard a third gunshot when she was outside. Britt's young son, who was in another bedroom, testified that he heard two gunshots and then Alilovich say "please don't do this." He then heard two more gunshots. According to her son, Britt came into the bedroom; her left chest was bleeding. Defendant also came into the bedroom and started to hit Britt in the face. He then stomped on her face more than once.

Dr. Robert Clark, qualified as an expert in pathology, performed an autopsy on Alilovich. Clark testified that Alilovich had gunshot wounds to the back of his right elbow, the back of his right shoulder, and his head. Clark opined that the cause of death was exsanguination from a gunshot wound to the chest. Alilovich had no wounds that suggested he had been in a fight. Dr. Glen Hastings, qualified as an expert in general and trauma surgery, treated Britt in the emergency room. Hastings testified that Britt had a concussion, four or five fractured ribs on each side of her chest, fractures in the lumbar spine, a fracture of the right orbital bone, and five gunshot wounds, including one to her left breast.

Three bullets were recovered from Alilovich's body, and two were recovered from the bedroom where defendant had stomped on Britt's face. Lieutenant Jeff Crump, qualified as an expert in firearms and tool mark identification, testified that he compared the five bullets to test shots from the .32– caliber revolver that was found in the woods. Crump identified four of the five bullets as having been fired from the revolver, and he could not exclude the revolver as having fired the fifth bullet. The revolver was silver with a black handle, and Britt had previously seen defendant with a silver .32– caliber revolver with a black handle. In his interview, defendant told two detectives that he shot Alilovich two times. According to Jones, defendant said that after his family

members arrived, he and Alilovich had more words. He then pulled out the gun and shot Alilovich twice and Britt once.

*People v. Davis*, No. 320773, 2016 WL 1125669, at *1, 8 (Mich. Ct. App. Mar. 22, 2016).

Petitioner's conviction was affirmed on appeal. *Id., reconsideration den.* No. 320773 (Mich. Ct. App. May 27, 2016); *lv. den.* 500 Mich. 933, 889 N.W.2d 490 (2017); *reconsideration den.* 500 Mich. 1004, 895 N.W.2d 519 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied his Sixth and Fourteenth Amendment rights guaranteed under the U.S. Constitution, and Michigan Constitution of 1963, Art I, §20; where the trial court abused its discretion by failing to hear Petitioner's motion for substitution of appellate counsel.

II. Petitioner was denied his Sixth Amendment right under the U.S. Constitution where trial court refused to adjourn his case once new counsel was obtained.

III. Petitioner was denied his Sixth and Fourteenth Amendment rights under the U.S. Constitution to a fair trial and due process where trial court abused its discretion when endorsing a late witness and denying petitioner adjournment to prepare an effective cross-examination.

IV. Petitioner was denied his Fourth and Fourteenth Amendment rights, and Michigan Constitution of 1963 Art. I, §17, where the trial court abused its discretion in denying petitioner's motion for disqualification or recusal of the judge.

V. Petitioner was denied his Sixth Amendment right guaranteed under the U.S. Constitution to effective

assistance of counsel where counsel failed to investigate several aspects of the case and instead relied on government's good faith, which is contrary to *Strickland v. Washington* and its progeny.

VI. Petitioner was denied his Sixth and Fourteenth rights guaranteed under the U.S. Constitution to effective assistance of counsel where counsel denied Petitioner a meaningful opportunity to present a complete defense.

VII. Petitioner was denied his Sixth Amendment right guaranteed under the U.S. Constitution to effective assistance of trial counsel where counsel of record failed to present a defense and properly investigate any potential witnesses for his defense.

VIII. Petitioner was denied his Sixth Amendment right guaranteed under the U.S. Constitution where he was denied a fair-cross section of jury selection at trial, thereby denying him due process and equal protection of law.

IX. Petitioner was denied his Sixth Amendment right guaranteed under the U.S. Constitution to effective assistance of counsel on appeal as of right where counsel denied Petitioner access to the courts and judicial review.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)

(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III. Discussion

### A. Exhaustion and Procedural Default

Respondent argues in his answer that several of Petitioner's ineffective assistance of counsel sub-claims have not been exhausted in the state courts. Respondent further argues that petitioner's fourth and eighth claims are procedurally defaulted because he failed to preserve them at the state court level.

A habeas petitioner's failure to exhaust his state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). An unexhausted claim may be adjudicated by a federal court on habeas review if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees,* 822 F.2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies).

Likewise, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Petitioner's claims are meritless. Regardless of whether the claims have been properly exhausted and/or are procedurally defaulted, they fail on their own merit.

## B. Claim 1: Substitution of Appellate Counsel

Petitioner first argues that the trial court judge abused his discretion by failing to conduct an adequate hearing on petitioner's motion to substitute appellate counsel.[2]

The Michigan Court of Appeals rejected petitioner's claim:

> Defendant also argues in his supplemental Standard 4 brief that the trial court erred in failing to address his request for substitute appellate counsel. In a November 2014 letter, defendant requested that he be appointed new appellate counsel. The trial court called a hearing, held on January 22, 2015, after it received a number of letters from defendant, in which defendant complained of appellate counsel's representation. At the hearing, the trial court recalled that one of defendant's complaints was that he did not have a copy of the transcripts. The trial court told defendant that it had asked its secretary to mail a copy of the transcripts to defendant. It then asked defendant if he had any other complaints. Defendant replied, "Basically that's really all." "It is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis v. LeGrow*, 258 Mich.App 175, 210; 670 NW2d 675 (2003). By stating that he had no other complaints regarding appellate counsel, defendant contributed to any error that the trial court made in not addressing his request for substitute appellate counsel. Accordingly, defendant is not entitled to any relief for the alleged error.

---

[2] Petitioner raised this claim as well as most, if not all, of his claims in several *pro se* appellate briefs that he filed in addition to the brief filed by appellate counsel. Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

*People v. Davis*, 2016 WL 1125669, at *11 (internal footnote omitted).

In reviewing a motion for substitution of counsel, a reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012). "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.* at 663-64.

Although all of the federal circuit courts agree that a court "cannot properly resolve substitution motions without probing why a defendant wants a new lawyer[,]" *Martel,* 545 U.S. at 664, the Supreme Court in *Martel* did not require, as a matter of federal constitutional law, that a trial court must engage in an inquiry with a criminal defendant concerning the nature of his complaints against counsel before denying a motion for substitution. The Supreme Court in *Martel* held that a federal district court did not abuse its discretion in denying a habeas petitioner's motion for substitution of counsel without first conducting an inquiry into the nature of his complaints, where the motion was untimely and the court was ready to render a decision in that case. *Id.* at 664-66. Therefore, there is no clearly established federal law requiring an inquiry by the

trial judge into the nature of a defendant's dissatisfaction with his counsel prior to denying a motion for substitution of counsel. *See James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006) (reversing a grant of relief because the inquiry requirement was not clearly established Federal law). In the absence of a showing that a habeas petitioner received the ineffective assistance of counsel at trial, a state trial judge's failure to inquire into a habeas petitioner's complaints against his counsel before denying a motion for substitution of counsel would not entitle the petitioner to habeas relief. *See Peterson v. Smith,* 510 F. App'x 356, 366-67 (6th Cir. 2013).

In the present case, the trial court judge conducted a hearing on petitioner's motion for substitute appellate counsel, with appellate counsel, petitioner, and the prosecutor present. Transcript, ECF 7-16 PageID.1554–56.[3] Appellate counsel indicated he was the second attorney appointed for petitioner after another attorney declined to accept the appointment. Appellate counsel informed the judge that he had filed the appellate brief with the Michigan Court of Appeals and was awaiting a response from the prosecutor. *Id.* at PageID.1553–54. The judge noted that he had received a number of letters from petitioner, but

---

[3] Although unclear, petitioner and appellate counsel may have been appearing at the hearing via teleconference and not in person. At one point, the judge asks petitioner "Are you still there?" suggesting that petitioner was participating in the hearing by telephone. PageID.1554. At another point, the judge refers to Daniel Rust, appellate counsel, as being on the phone. PageID.1557.

that petitioner's main complaint appeared to be that appellate counsel had not provided him with the trial transcripts. The judge explained that appellate counsel needed the transcripts to perfect the appeal, indicated that he would have his secretary provide petitioner with a copy of the transcripts, and noted that petitioner had wanted his appeal filed and wanted a copy of the transcripts. *Id.* at PageID.1555. The judge then asked: "Is there anything else we can help you with?" *Id.* Petitioner replied: "Basically that's really all. I mean minor things like—I don't know—I don't know how things go." *Id.* The trial court judge provided petitioner with an opportunity to address his issues concerning appellate counsel, Daniel Rust.

The judge extensively and thoroughly addressed petitioner's concerns regarding his appellate counsel. Petitioner indicated that his primary concern was obtaining the transcripts so that he could file his own *pro se* appellate brief. Petitioner did not indicate that he had any other complaints with appellate counsel. The Michigan Court of Appeals' conclusion that the trial judge's denial of petitioner's motion to substitute appellate counsel did not violate his Sixth Amendment rights was therefore not an unreasonable application of federal law. Petitioner is not entitled to federal habeas relief on his first claim. *See Henness v. Bagley*, 644 F.3d 308, 322 (6th Cir. 2011).

### C.  Claim 2: Denial of Counsel of Choice

Petitioner next alleges that he was denied his right to the counsel of his choice when the judge refused to adjourn his trial after petitioner had retained an attorney to replace his second court-appointed counsel.

The Michigan Court of Appeals rejected petitioner's claim:

> The trial court's denial of defendant's request for an adjournment did not deny defendant a fair opportunity and reasonable time to retain counsel of his own choice. Defendant was arraigned on January 22, 2013, but he did not retain counsel until just before the trial that began January 14, 2014. Additionally, trial had already been adjourned twice. The second adjournment was because the trial court granted defendant's request to remove his first appointed counsel. Notably, defendant did not seek retained counsel after his first attorney withdrew. He waited seven weeks, until the eve of trial. Retained counsel then requested an adjournment of at least four months even though the case did not present any complex issues. While defendant did not want his appointed replacement defense counsel to represent him, he made no specific claim that this counsel was unprepared, incompetent to try the case, or that he and counsel had irreconcilable differences. Under these circumstances, the trial court's denial of an adjournment fell within the range of reasonable and principled outcomes. Defendant was not denied his Sixth Amendment right to be represented by an attorney of his choice.

*People v. Davis*, 2016 WL 1125669, at *4.

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he will be represented by a

particular attorney. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). A criminal defendant who has the desire and the financial means to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale,* 491 U.S. at 624-25). However, while a criminal defendant who can afford his own attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4 F.3d at 1348 (citing *Wheat v. United States,* 486 U.S. 153, 159 (1988)). Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir. 1985). "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn,* 740 F.2d 407, 413 (6th Cir. 1984); *see also Gonzalez-Lopez,* 548 U.S. at 151-52 ("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them . . . . We have recognized a trial

court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.") (internal citations omitted). Finally, the right to counsel of choice may not be used to unreasonably delay a trial. *See Linton v. Perini,* 656 F.2d 207, 209 (6th Cir. 1981).

As previously discussed when addressing petitioner's first claim, *supra,* a court that has before it a motion to substitute counsel should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. at 663.

Petitioner is not entitled to relief for several reasons. First, Petitioner's request for a continuance to substitute in retained counsel was untimely because it was made on the eve of trial. Petitioner offered no reasons to the state courts or to this Court why he did not attempt to retain counsel earlier. The Sixth Circuit has noted that when "the granting of the defendant's request [for a continuance to obtain new counsel] would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *U.S. v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008) (quoting *United States v. Pierce*, 60 F.3d 886, 891 (1st Cir. 1995)). The Sixth Circuit has rejected similar requests for the replacement of counsel as being untimely. *See*

*United States v. Trujillo,* 376 F.3d 593, 606-07 (6th Cir. 2004) (motion for substitution of counsel was untimely, coming only three days prior to the start of the trial); *United States v. Jennings,* 83 F.3d 145, 148 (6th Cir. 1996) (motion to continue to obtain new counsel untimely when it was made the day before trial). In the present case, petitioner's request for a continuance to substitute in retained counsel on the day of trial was untimely, particularly where the petitioner had several opportunities prior to trial to bring his dissatisfaction with his second appointed counsel to the attention of the trial court. *See Whitfield,* 259 F. App'x at 834.

Moreover, this Court notes that petitioner had already discharged his first attorney and sought on the day of trial to discharge his second counsel and retain what would have been his third attorney. There had already been delays in the case due to petitioner's replacement of his first attorney. Permitting petitioner to discharge his second attorney in order to hire a third attorney would have led to even further delays, thus, the trial court did not err in denying petitioner's request to discharge his second attorney. *See, e.g., United States v. Ammons*, 419 F. App'x 550, 552 (6th Cir. 2011).

Petitioner has also failed to establish good cause for the substitution of counsel where he failed to show that the conflict between himself and his attorney was so great that it resulted in a total lack of

communication which prevented an adequate defense. *See Jennings*, 83 F.3d at 149.

Petitioner proceeded to trial with his second court-appointed attorney. Following trial, petitioner filed for a *Ginther* hearing[4] alleging that his trial counsel was ineffective and claiming that he was denied his right to the effective assistance of counsel. The trial court judge conducted a *Ginther* hearing and found petitioner's contentions to be meritless. In general, the trial court judge found that the length of the opening and closing arguments, witnesses and experts that were to be called, and whether to request a jury instruction on involuntary manslaughter were all within the realm of trial strategy. Transcripts, ECF No. 7-18, 7-19.

Petitioner was not entitled to substitute counsel because his complaints against counsel involved differences of opinion regarding trial strategy and what motions to file rather than any irreconcilable conflict or total lack of communication. *See e.g. Adams v. Smith*, 280 F. Supp. 2d 704, 720 (E.D. Mich. 2003). The record in this case does not demonstrate that the disagreements between Petitioner and his attorney rose to the level of a conflict sufficient to require the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005).

---

[4] "When a defendant asserts that his assigned lawyer is not adequate or diligent . . . the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusion." *People v. Ginther,* 212 N.W.2d 922, 924 (1973).

Finally, Petitioner is unable to show that he was prejudiced by the failure of the trial court to grant a continuance to allow Petitioner's privately-retained counsel to prepare for trial in light of the fact that he received effective assistance of counsel at trial. *See U.S. v. Vasquez*, 560 F.3d 461, 468 (6th Cir. 2009). "The strained relationship" between Petitioner and his attorney was not a "complete breakdown in communication" that prevented the petitioner from receiving an adequate defense. *Id.* Petitioner is not entitled to relief on his second claim.

### D. Claim 3: Late Endorsement

Petitioner next argues that the judge erred in allowing the prosecutor to call Robert Jones, who was endorsed by the prosecutor as a witness four days before trial, in violation of Mich. Comp. Laws § 767.40a(3), which requires the prosecutor to send to defense counsel a list of all the witnesses he intends to call no less than 30 days before trial. Petitioner further argues that the judge erred in refusing to adjourn the trial so that counsel could have additional time to prepare for Jones' testimony. Jones was the jail inmate who testified about statements that petitioner made to him about the shooting after petitioner was placed in the same jail block as Jones.

It is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559

(1977) (denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir.1988) (citing *Weatherford*). "It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably." *Weatherford v. Bursey*, 429 U.S. at 559. A claim that a prosecutor violates a state discovery rule requiring the state to disclose the names of witnesses it reasonably anticipates calling is not cognizable on federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F.3d 416, 439-41 (6th Cir. 2001), *opinion corrected on denial of reh'g*, 307 F.3d 459 (6th Cir. 2002). Moreover, a decision regarding the endorsement of a witness generally constitutes a state law matter within the trial court's discretion. *See Hence v. Smith*, 37 F. Supp. 2d 970, 982 (E.D. Mich. 1999) (citing cases); *Whalen v. Johnson*, 438 F. Supp. 1198 (E.D. Mich. 1977) (it is not a fundamental error to permit a prosecutor to endorse a witness during trial even though the prosecutor had previously filed an affidavit stating that the witness was not material). Under Mich. Comp. Laws § 767.40(a)(4), a prosecutor is permitted to add or delete witnesses from a witness list "at any time upon leave of the court and for good cause shown or by stipulation of the parties."

The Michigan Court of Appeals found that there was good cause to allow the late endorsement of Jones:

> The prosecutor did not learn about Jones and the possibility of his testifying until four days before trial. She sent a detective to interview Jones, and it was not until the day before trial that the prosecutor learned the details of Jones's proposed testimony. The late discovery of Jones provided good cause for the late endorsement.

*People v. Davis,* 2016 WL 1125669, at *1.

The Michigan Court of Appeals further rejected petitioner's claim, by noting that "[t]he prosecutor agreed not to call Jones as a witness until the end of trial, and there was no dispute that trial would last several days. Accordingly, defendant had the opportunity to interview Jones." *People v. Davis*, 2016 WL 1125669, at *2. Moreover, although petitioner alleges that his trial counsel never actually interviewed Jones prior to him testifying, *see* ineffective assistance of counsel claims, *infra*, counsel did effectively cross-examine Jones. The late endorsement of Mr. Jones did not prejudice petitioner, because he had an ample opportunity to cross-examine Mr. Jones and bring out any inconsistencies in his testimony and his motivations for testifying. *See e.g. Warlick v. Romanowski*, 367 F. App'x 634, 644 (6th Cir. 2010). Petitioner is not entitled to relief on his third claim.

### E. Claim 4: Judicial Disqualification

Petitioner next argues that the trial judge should have recused himself from Petitioner's case because of judicial bias.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). However, to state a claim that a judge is biased, a defendant must show either actual bias or the appearance of bias creating a conclusive presumption of actual bias. *United States v. Lowe*, 106 F.3d 1498, 1504 (6th Cir. 1997). "Under this standard, '[o]nly in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required.'" *Getsy v. Mitchell,* 495 F.3d 295, 311 (6th Cir. 2007) (quoting *Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006)). A judge is required to recuse himself only where he has actual bias or "a predisposition 'so extreme as to display clear inability to render fair judgment.'" *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008) (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)). In reviewing a judicial bias claim, a federal habeas court should employ the initial presumption that the assigned trial judge properly discharged his official duties. *See Johnson v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

Petitioner merely points to unfavorable rulings by the judge in support of his judicial bias claim. The Supreme Court has indicated that

"judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky,* 510 U.S. at 555. "In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Id.* Federal courts have denied habeas relief on judicial bias claims based solely on allegations that the judge had ruled adversely against the petitioner. *See Mason v. Burton,* 720 F. App'x 241, 242–43 (6th Cir. 2017); *Hardaway v. Burt,* No. 16-1666, 2017 WL 2831020, at *4 (6th Cir. Jan. 18, 2017); *Cunningham v. Stegall*, 13 F. App'x 286, 290 (6th Cir. 2001); *Vliet v. Renico*, 193 F. Supp. 2d 1010, 1016 (E.D. Mich. 2002); *Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999). Petitioner is not entitled to relief on his judicial bias claim.

### F. Claims 5, 6 and 7: Ineffective Assistance of Counsel

In his fifth, sixth, and seventh claims, petitioner alleges the ineffective assistance of trial counsel. Because many of his sub-claims overlap, the Court consolidates the three claims for analysis.

A defendant must satisfy a two-prong test to establish the denial of the effective assistance of counsel. First, the defendant must demonstrate that his attorney's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. Stated differently, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard."

23

*Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner initially argues that he was constructively denied the assistance of counsel because his trial counsel, who was appointed to replace petitioner's first court-appointed attorney, only had several weeks to prepare for petitioner's trial. The Supreme Court has recognized that in certain Sixth Amendment contexts, prejudice is presumed. *Strickland,* 466 U.S. at 692. The "actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance." *Id.*

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice

to establish ineffective assistance of counsel. *Moss v. Hofbauer,* 286 F.3d 851, 860 (6th Cir. 2002) (quoting *United States v. Cronic,* 466 U.S. 648, 659 (1984)). However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002).

Petitioner's trial counsel filed and argued a motion to suppress petitioner's statement to the police. An evidentiary hearing was conducted on the motion to suppress, during which counsel questioned the witnesses and argued for the exclusion of petitioner's statement to the police on the ground that it was involuntary. Transcript, ECF No. 7-9. Prior to trial, the prosecutor made a plea bargain offer to defense counsel, in which petitioner would plead guilty to second-degree murder, in exchange for dismissal of a first-degree murder charge, as well as dismissal of the other charges. Counsel conveyed the plea to petitioner, who rejected the offer. Transcript, ECF No. 7-10 PageID.719–21. The judge, the prosecutor, and defense counsel then discussed various pieces of evidence that would be introduced at trial. *Id.* at PageID.722–32.

On the first day of trial, defense counsel moved for an adjournment of trial, because Petitioner's family had retained another attorney. Counsel also objected to the late endorsement of Mr. Jones or in the alternative requested a continuance so that he could prepare for Jones'

testimony. Transcript, ECF No. 7-11, PageID.744–47. Defense counsel participated in jury *voir dire,* including objecting to some of the prosecutor's questions of the prospective jurors, questioned the jurors himself, and requested the removal of several jurors. *Id.* at PageID.797, 800–01, 805, 810, 817–18, 821–22, 825, 830, 834, 837–38, 841–42. Defense counsel made an opening argument contending that petitioner acted in self-defense. *Id.* at PageID.883–84. Counsel cross-examined numerous witnesses. *Id.* at PageID.913–18, 945–52, 959–61; Transcript, ECF No. 7-12, PageID.1008–09, 1036–38, 1050–51, 1062, 1073, 1147–1150, 1170–72, 1194–96; Transcript, ECF No. 7-13 PageID.1260–61, 1273–75, 1325–1328, 1347, 1361–64, 1406–08; Transcript, ECF No. 7-14 PageID.1442–44. Counsel later moved for a directed verdict, arguing that there was insufficient evidence for the case to go to the jury on a first or second-degree murder charge. ECF No. 7-14 PageID.1458. Counsel asked for a jury instruction on self-defense, which was granted. *Id.* at PageID.1466–67. Defense counsel later made a closing argument, arguing that petitioner had acted in self-defense. *Id.* at PageID.1482–86.

In the present case, counsel's alleged errors did not rise to the level of the constructive denial of counsel, because counsel actively represented petitioner at his trial. *Moss,* 286 F.3d at 860–62. The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F.3d 236, 247 (6th Cir. 2007) (citing *Bell,*

535 U.S. at 697). Counsel's alleged failures do not amount to a complete failure to provide a defense. The presumption of prejudice therefore does not apply and petitioner would be required to show that he was actually prejudiced by counsel's alleged omissions in order to obtain habeas relief. *Id.*

Petitioner as part of his claim argues that counsel was ineffective because he only visited him twice in jail prior to trial. Petitioner is not entitled to habeas relief on this claim because he failed to show how he was prejudiced by counsel's failure to visit him more often in jail. *See Bowling v. Parker,* 344 F.3d 487, 506 (6th Cir. 2003) (trial attorneys' alleged failure to consult with defendant did not prejudice defendant in capital murder case, and thus could not amount to ineffective assistance, although attorneys allegedly met with defendant for less than one hour in preparing defense, where defendant failed to show how additional consultation with his attorneys could have altered outcome of trial).

Petitioner also alludes throughout his pleadings to the fact that his trial counsel had a drinking problem.[5] Petitioner suggests that counsel's problem with alcohol prevented him from adequately representing him at trial. In light of the fact that petitioner's counsel vigorously

---

[5] *See* ECF 1-1, Page.ID 186–87, 190, 213 (in this last reference, petitioner's post-trial attorney, Mr. Smith, in a letter to petitioner's appellate attorney Daniel Rust, mistakenly refers to Mr. White, petitioner's trial attorney, as Mr. Rust. It is obvious from the fact that Mr. Smith was writing to Mr. Rust that his allegation that trial counsel was suffering from alcoholism at the time of trial was a reference to trial counsel and not to Mr. Rust).

represented petitioner at trial in a lucid and alert manner, petitioner failed to show that counsel's alleged alcohol problem amounted to a *per se* denial of the effective assistance of counsel. *See Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007) (trial counsel's alleged shortcomings at defendant's murder trial were not sufficient to create *per se* prejudice, as to support defendant's ineffective assistance of counsel claim, despite trial counsel's alleged drug and alcohol abuse, where trial counsel was conscious throughout the proceedings, cross-examined state's witnesses, moved for judgment of acquittal, and made a coherent closing argument).

Petitioner next argues that trial counsel was ineffective for failing to argue that the murder victim was a professional mixed martial arts fighter to bolster his self-defense claim. Counsel did in fact extensively cross-examine Petitioner's father regarding the victim's martial arts background. Ricky Davis also testified that "[e]veryone knew [the victim]. Knew him from being a professional kick boxer." Transcript, ECF No. 7-13 PageID.1362.

Petitioner next argues that trial counsel was ineffective for failing to request a psychiatric evaluation to determine Petitioner's competency to stand trial. Counsel testified at the *Ginther* hearing that he had no good-faith basis to believe that there was any reason to believe that Petitioner was incompetent to stand trial. Transcript, ECF No. 7-18 PageID.1658. The judge, in rejecting the ineffective assistance of counsel claim, concluded that there was no basis to request an evaluation and no

deficiency from counsel's decision not to seek an evaluation. Transcript, ECF No. 7-19 PageID.1909–10.

A defendant is not prejudiced by counsel's failure to seek a competency examination, absent an actual basis to support a claim of incompetency at the time of the proceeding. *See Bair v. Phillips,* 106 F. Supp. 2d 934, 941 (E.D. Mich. 2000). Defense counsel's failure to challenge Petitioner's competency to stand trial did not amount to deficient performance in the absence of any evidence that Petitioner was acting abnormally at the time of his pre-trial or trial proceedings. *Id.* at 942.

Petitioner next claims that counsel "failed to make crucial objections." ECF No. 1 PageID.96. Counsel testified at the *Ginther* hearing that his decision not to repeat an objection he had already made unsuccessfully was a tactical decision, not a sign of incompetence. Transcript, ECF No. 7-18 PageID.1619–20.

The Supreme Court has observed that "[a]n objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for review." *Douglas v. State of Ala.*, 380 U.S. 415, 422 (1965). Indeed, "[N]o legitimate state interest" is served "by requiring repetition of a patently futile objection," which has been rejected several times, "in a situation in which repeated objection might well affront the court or

prejudice the jury beyond repair." *Id.* In light of the fact that the trial court had already ruled against him, defense counsel may reasonably have concluded that further objection would have been fruitless. *See, e.g., Garrett v. United States,* 78 F.3d 1296, 1301–02 (8th Cir. 1996). "[I]neffective assistance should not be found under *Strickland* when counsel fails to perform those acts which clearly appear to be futile or fruitless at the time the decision must be made." *Id.,* at 1303 n.11.

Petitioner next contends that trial counsel was ineffective for admitting in his opening statement that Petitioner had a delivery of cocaine conviction. As the judge noted in rejecting Petitioner's ineffective assistance of counsel claim, the jury was going to learn that Petitioner had a prior felony conviction because that was one of the elements of the felon-in-possession of a firearm charge. The judge concluded that counsel's decision to inform the jurors of the nature of the prior conviction, rather than stipulating that petitioner had a prior unspecified conviction, may have been strategic, so that the jurors would not speculate that petitioner had a prior assaultive or weapons conviction. ECF No. 7-19 PageID.1901. Trial counsel was not ineffective for failing to stipulate that petitioner had a prior felony conviction, because it might have been sound strategy for counsel to allow Petitioner's prior conviction to be admitted to prevent the jurors from speculating about the crime Petitioner had been convicted of. *See, e.g., Bradley v. Birkett*, 192 F. App'x 468, 476 (6th Cir. 2006). Moreover, petitioner was not prejudiced by

counsel's failure to stipulate to the prior conviction, in light of the significant evidence of petitioner's guilt. *Id.*

Petitioner next contends that counsel was ineffective because he showed disinterest in his case, expressed contempt for Petitioner, thought that the questions that Petitioner wanted to have asked were stupid, and told Petitioner he thought he was guilty. ECF No. 1 Page.ID 96–97. The mere fact that an attorney dislikes or distrusts his client does not establish ineffective assistance of counsel or a conflict of interest, absent a showing of how this animosity affected counsel's performance. *See Hale v. Gibson,* 227 F.3d 1298, 1312–13 (10th Cir. 2000). Petitioner has made no such showing.

Petitioner next contends that counsel was ineffective for failing to call character witnesses or witnesses to support his self-defense claim.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Petitioner failed to attach any affidavits from these additional witnesses concerning their proposed testimony, nor did he provide any such affidavits either in the motion for a *Ginther* hearing filed by counsel Mr. Smith or the numerous *pro se* supplemental Standard 4 briefs and motions that petitioner filed with the Michigan Court of Appeals.[6]

---

[6] *See* ECF No. 7-20 PageID.2078–89, ECF No. 7-21 PageID.2169–2261, ECF No. 7-22 PageID.2262–2311.

By failing to present any evidence to the state courts in support of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner has failed to attach any offer of proof or any affidavits sworn by the proposed witnesses. Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551*,* 557 (6th Cir. 2007).

Petitioner further alleges that counsel lied to him by telling him his sister would not testify on his behalf. But counsel's testimony at the *Ginther* hearing does not substantiate Petitioner's claim. According to counsel, he and Petitioner discussed whether to call Ashley Davis to testify and decided that it would be better not to call her. ECF No. 7-18 PageID.1629. Petitioner failed to provide an affidavit from his sister, so this Court is unable to determine whether he was prejudiced by counsel's decision not to call her to testify.

Petitioner next claims that counsel was ineffective for failing to investigate certain witnesses. This claim fails for the same reason as Petitioner's claim above, namely, that he failed to provide this Court with affidavits from these witnesses concerning their proposed testimony and willingness to testify on Petitioner's behalf. Counsel testified at the *Ginther* hearing that he interviewed several witnesses and found that they would not be helpful. *Id.* at PageID.1602. In addition, counsel had the notes from Petitioner's first attorney regarding that attorney's interviews of other witnesses, and based on those notes made a reasonable decision that it was not necessary to interview those witnesses again. *Id.* at PageID.1602–04. The Sixth Circuit "has recognized that a defendant is not denied effective assistance of counsel even if his attorney conducts no independent investigation of his own but merely receives and relies upon a prior attorney's work product in going to trial." *Ray v. Rose*, 535 F.2d 966, 975 (6th Cir. 1976). Petitioner failed to show that counsel's decision to rely on the investigation of prior counsel was unreasonable.

Petitioner next alleges that trial counsel was ineffective for failing to interview Mr. Jones, the jailhouse informant, prior to him testifying. Petitioner argues that had counsel interviewed Mr. Jones, he would have discovered that Mr. Jones committed perjury. Petitioner also argues that if counsel had interviewed Jones, he would have discovered Jones received favorable treatment in exchange for his testimony. This

information was elicited at trial by the prosecution. Transcript, ECF No. 7-14 PageID.1433–34. Defense counsel cross-examined Jones about this plea deal on cross examination, *Id.* at PageID.1443, and used this plea deal to attack Jones' credibility in closing argument. *Id.* at PageID.1485. Petitioner has failed to show that he was prejudiced by counsel's failure to interview Jones prior to him testifying.

Petitioner also alleges that trial counsel was ineffective for failing to present videotape evidence from the Berrien County Jail which he claims would have shown that he and Mr. Jones never had any contact, in order to discredit Jones' testimony. Petitioner also claims that counsel should have obtained the surveillance tapes from a liquor store and a gas station in order to discredit several other witnesses. ECF No. 1-1 PageID.123.

The problem with this claim is that, like the others, Petitioner presented no evidence to this Court or to the state courts that such evidence exists or that it contains exculpatory or impeachment material. In the absence of such a showing, Petitioner is not entitled to relief on his claim.

Petitioner next contends that trial counsel was ineffective in his cross-examination of the witnesses.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment

strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

Defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the prosecution witnesses and in his closing argument emphasized the inconsistencies and weaknesses in the testimony of the various witnesses, as well as their possible motivations for testifying falsely against petitioner. *See Krist v. Foltz,* 804 F.2d 944, 948-49 (6th Cir. 1986).

Although other attorneys might have reached a different conclusion about the value of cross-examining the witnesses in greater detail, counsel's strategic choice not to cross-examine these witnesses in greater detail was "'within the wide range of reasonable professional assistance.'" *See Moss v. Hofbauer,* 286 F.3d 851, 864 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). Finally, Petitioner has failed to identify how additional impeachment of these witnesses would have affected the verdict. Defense counsel was not ineffective by not more forcefully cross-examining the witnesses, particularly when the effect of further probing is entirely speculative on Petitioner's part. *See Jackson v. Bradshaw,* 681 F.3d 753, 764–65 (6th Cir. 2012).

Petitioner next claims that defense counsel was ineffective because he failed to object to Jones' testimony as a violation of Petitioner's Sixth Amendment right to counsel.

The Michigan Court of Appeals rejected petitioner's claim:

> Jones testified that he came into contact with defendant after defendant was moved into the same jail block as he. There is no record evidence to indicate that the police purposely placed defendant in the same block as Jones or that the police and Jones had worked out a plan to gain incriminating statements from defendant. Nothing on the record refutes that Jones, on his own and without any instruction or encouragement from the police, brought defendant's statements to the attention of the prosecutor and police. So, an objection to Jones's testimony on the basis that it violated defendant's Sixth Amendment right to counsel would have been futile; failing to assert a futile objection is not ineffective assistance.

*People v. Davis*, 2016 WL 1125669, at *5.

Once a defendant's Sixth Amendment right to counsel has formally attached, a defendant is denied that right when law enforcement officials "deliberately elicit" incriminating statements from him in the absence of his lawyer. *Massiah v. United States,* 377 U.S. 201, 206 (1964). However, the Sixth Amendment does not forbid the admission of a criminal defendant's statements to a jailhouse informant who may be placed in close proximity to the defendant in jail but who makes no effort to initiate or to stimulate conversations about the crime with which the defendant is charged. *See Kuhlmann v. Wilson*, 477 U.S. 436, 456 (1986). A

defendant's Sixth Amendment right to counsel is "is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." *Maine v. Moulton*, 474 U.S. 159, 176 (1985). A criminal defendant thus does not show a violation of his Sixth Amendment right to counsel merely by showing that an informant, either through a prior arrangement with the police or voluntarily, reported his incriminating statements to the police. *Kuhlmann,* 477 U.S. at 459. *Massiah* is concerned with secret interrogation by investigatory techniques which are considered the equivalent of direct police interrogation. A defendant must demonstrate that the police and their informant took some action, beyond merely listening, which was designed deliberately to elicit incriminating remarks from the defendant. *Id.*

Petitioner failed to show that Jones was acting as a government agent when petitioner made his incriminating remarks to him or that Jones undertook any action that was deliberately designed to elicit these incriminating remarks from Petitioner. Because the evidence establishes that Jones merely listened to Petitioner's confession without encouraging it or otherwise eliciting it, the use of Petitioner's confession to Jones did not violate defendant's right to counsel. *See Post v. Bradshaw,* 621 F.3d 406, 424–25 (6th Cir. 2010). Counsel was not ineffective for "failing to pursue a meritless *Massiah* motion." *Price v. Phelps*, 894 F. Supp. 2d 504, 523 (D. Del. 2012).

Petitioner next claims that trial counsel was ineffective for failing to hire a private investigator. Petitioner, however, has failed to show that counsel would have obtained beneficial information had he hired an investigator, thus, he failed to establish that he was prejudiced by counsel's failure to hire an investigator. *See Welsh v. Lafler*, 444 F. App'x 844, 851 (6th Cir. 2011) (defense counsel's failure to hire private investigator during prosecution for criminal sexual conduct did not prejudice defendant, and thus was not ineffective assistance; defendant failed to present sufficiently detailed and convincing account of what additional facts investigator could have discovered in support of defendant's innocence).

Petitioner finally argues that counsel was ineffective for failing to object to the prosecutor's argument that it was possible that someone planted a knife on the victim after he was killed in order to fabricate a self-defense claim.

It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial; however, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). The prosecutor's suggestion that the knife could have been planted on the victim was a reasonable inference from the evidence that the victim's fingerprints were not found on the

knife and no one saw the victim carrying a knife that night. Transcript, ECF No. 7-14 PageID.1480.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). Because the prosecutor's argument was not improper, petitioner is unable to establish that he was prejudiced by counsel's failure to object. *Slagle v. Bagley*, 457 F.3d 501, 528 (6th Cir. 2006). Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

### G. Claim 8: Systematic Exclusion.

Petitioner next claims that he was denied a jury drawn from a fair cross-section of the community because he was tried by an all-white jury.

Although a defendant has no right to a jury composed in whole or in part of persons of his own race, he does have the right to be tried by a jury whose members are selected by non-discriminatory criteria. *Powers v. Ohio*, 499 U.S. 400, 404 (1991) (internal citations omitted). While states may prescribe relevant qualifications for their jurors, members of

a community may not be excluded from jury service on account of their race. *Id.*

A defendant, however, may not challenge the makeup of a jury merely because no members of his race are on a jury, but must prove that jurors of his race have been systematically excluded. *Apodoca v. Oregon*, 406 U.S. 404, 413 (1972). To establish a *prima facie* violation of the fair cross-section requirement, a defendant must show:

> (1) that the group alleged to have been excluded is a 'distinctive group' in the community;
> (2) that the representation of that group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
> (3) that the under-representation is due to the systematic exclusion of the group in the jury selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

"More than mere numbers must be provided to establish" that members of a particular ethnic or racial group are systematically under-represented in the jury venire. *United States v. Greene*, 971 F. Supp. 1117, 1128 (E.D. Mich. 1997). The strength of the evidence of under-representation of the group in the venire is only one factor to be considered in determining whether a *prima facie* violation of the fair cross-section requirement has been established. Factors such as the nature of the process by which jury lists are composed and the length of

time of under-representation, together with the strength of the evidence that purports to establish unfair and unreasonable representation also need to be examined. *Id.* (citing to *Ford v. Seabold*, 841 F.2d 677 (6th Cir. 1988)).

The only evidence that petitioner offers in support of his claim is the fact that a single African-American juror who had initially been called to sit on the jury panel had been excused. Petitioner does not identify this juror, nor does he offer any evidence concerning the number of African-American jurors who were in the entire jury pool. "'[A] one-time example of underrepresentation of a distinctive group wholly fails to meet the systematic exclusion element' to establish a prima facie violation of the Sixth Amendment's requirement that jurors in criminal cases be drawn from a fair cross-section of the community." *Gardner v. Kapture*, 261 F. Supp. 2d 793, 802 (E.D. Mich. 2003) (quoting *McGinnis v. Johnson*, 181 F.3d 686, 690 (5th Cir.1999)). Petitioner failed to show that African-Americans were systematically excluded from jury service in Berrien County at the time of his trial. Conclusory assertions of underrepresentation are insufficient to support a systematic exclusion claim. *See U.S. v. McCaskill*, 48 F. App'x 961, 962 (6th Cir. 2002). Petitioner's failure to point to any evidence supporting a *prima facie* violation of the fair cross-section requirement defeats this claim. *Id.*

## H. Claim 9: Transcripts

Petitioner finally alleges that his due process rights were violated because he was not provided copies of the trial transcripts to assist him in preparing his *pro se* Standard 4 briefs that he filed on appeal in addition to the brief submitted by appellate counsel.

Petitioner's claim is without merit because the trial transcripts were provided to him by the trial court.

In any event, petitioner fails to state a claim upon which relief can be granted. A criminal defendant has no federal constitutional right to self-representation on direct appeal from a criminal conviction. *Martinez v. Court of Appeal of California,* 528 U.S. 152, 163 (2000). This is because the rights protected by the Sixth Amendment, including the right to self-representation, are rights that are available to prepare for trial and at the trial itself. However, the Sixth Amendment does not include any right to appeal. *Id.* at 160. The Supreme Court also rejected the idea that the right to self-representation on appeal could be grounded in the Due Process Clause [of the Fourteenth Amendment], because "[U]nder the practices that prevail in the Nation today, however, we are entirely unpersuaded that the risk of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional right of self-representation is a necessary component of a fair appellate proceeding". *Martinez,* 528 U.S. at 161.

Thus, there is no constitutional entitlement to submit a *pro se* appellate brief on direct appeal from a criminal conviction in addition to a brief submitted by appellate counsel. *See McMeans v. Brigano,* 228 F.3d 674, 684 (6th Cir. 2000). By accepting the assistance of counsel, the criminal appellant waives his right to present *pro se* briefs on direct appeal. *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996); *see also Henderson v. Collins,* 101 F. Supp. 2d 866, 881 (S.D. Ohio 1999); *aff'd in part, vacated in part on other grounds*, 262 F.3d 615 (6th Cir. 2001) (defendant who was represented by counsel and also sought to submit *pro se* brief upon appeal did not have right to such hybrid representation).

Because Petitioner was represented by appellate counsel, any failure by the trial court or appellate counsel to provide Petitioner with the trial transcripts so that he could prepare his own *pro se* brief would not violate Petitioner's constitutional rights. *See U.S. v. Dierling*, 131 F.3d 722, 734 n. 7 (8th Cir. 1997); *Foss v. Racette*, No. 1:12-CV-0059, 2012 WL 5949463, at *4 (W.D.N.Y. Nov. 28, 2012); *see also Willis v. Lafler*, No. 05-74885, 2007 WL 3121542, at *18 (E.D. Mich. Oct. 24, 2007) (petitioner not entitled to habeas relief based upon trial court's failure to rule on petitioner's post-trial motion to compel copies of transcripts and videotapes when petitioner was represented by appellate counsel).

Petitioner also alleges that his appellate counsel was ineffective for failing to move for a *Ginther* hearing on his ineffective assistance of trial counsel claims. The Sixth Amendment guarantees a defendant the right

to the effective assistance of appellate counsel on an appeal of right, *see Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). In the present case, although Petitioner's original appellate counsel did not move for a *Ginther* hearing, Petitioner retained a second attorney, Mr. Shawn Patrick Smith, who successfully moved for a *Ginther* hearing, which was conducted on June 11 and 26, 2015. Petitioner was represented by this attorney at the *Ginther* hearing. "Since no other Supreme Court precedent has expanded the *Evitts* rule to require a forum for ineffective assistance of appellate counsel claims when the appellant's case was actually heard and decided," as was the case here, Petitioner is not entitled to habeas relief on his ninth claim. *Wilson v. Parker*, 515 F.3d 682, 708 (6th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Feb. 25, 2009).

## IV. Conclusion

The Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court also denies Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

**SO ORDERED.**

Dated: April 30, 2019        s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE